UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY LEE LAWSON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 6:13-CR-32-GFVT-HAI-1<br><br>RECOMMENDED DISPOSITION |

*** *** *** ***

The Court, on referral from District Judge Van Tatenhove, considers reported supervised release violations by Defendant Jeffrey Lee Lawson. *See* D.E. 330 at 2. Judge Van Tatenhove imposed a judgment against Defendant in October 2014, following a guilty plea to conspiring to distribute oxycodone and conspiring to manufacture counterfeit obligations. D.E. 221. Defendant was originally sentenced to forty months of imprisonment and a three-year term of supervised release. *Id.* at 2-3. In October 2015, Defendant's term of imprisonment was reduced to thirty-two months. *See* D.E. 227. Defendant was released on April 28, 2016, and his term of supervision is currently scheduled to expire on April 27, 2019.

**I.**

On March 19, 2019, the United States Probation Office ("USPO") issued a Supervised Release Violation Report ("the Report") charging Defendant with four violations. The USPO then secured a warrant from Judge Van Tatenhove the next day. *See* D.E. 331.

According to the Report, on December 21, 2018, U.S. Probation Officer Scott Greiwe contacted Defendant at his reported residence in Williamsburg, Kentucky. At the time, Defendant reported living with his girlfriend, Estella Stanley.

On March 6, 2019, Officer Greiwe contacted Defendant's reported employer, Roger's Group, Inc., to verify Defendant's employment. According to the human resources department at Roger's Group, Defendant had been terminated from employment on February 6, 2019, due to compatibility issues and for breaking company policy.

Also on March 6, Officer Greiwe contacted Stanley at her residence. She said Defendant had not resided with her since she asked him to leave in September 2018. Regarding Officer Greiwe's home visit on December 21, 2018, Stanley said that Defendant "broke into" her home and "staged" his clothes in her closet. Stanley also informed Officer Greiwe that she had filed for an Emergency Protective Order and had obtained a warrant after Defendant threatened to kill her. Officer Greiwe conducted a walk-through of the home. The men's clothing that had been in the closet during Officer Greiwe's December home visit was now gone.

Officer Greiwe then contacted officials with the Whitley County Sheriff's Office. They confirmed that Defendant had an active warrant that was issued on January 2, 2019, for terroristic threatening – third degree, in violation of KRS § 508.080. Officer Greiwe was also informed that there was an active summons for a Temporary Interpersonal Protective Order issued on January 2, 2019. Neither the warrant nor the summons had been served on Defendant. Both were brought to the Whitley County District Court by Stanley.

On the afternoon of March 6, Defendant sent Officer Greiwe a text message and reported that he no longer worked at Roger's Group, but advised he had a new job. Officer Greiwe directed Defendant to report to the probation office on March 8 to discuss the possible violations. On that day, Defendant reported as directed, and he provided a urine specimen that tested positive for oxycodone and buprenorphine via instant testing device. When Officer Greiwe asked him about the results, Defendant said he last used oxycodone "a couple days ago" from a prescription he had

filled in August 2018. According to a Kentucky All Schedule Prescription Electronic Inquiry (KASPER), Defendant's last filled prescription was of eight oxycodone tablets on August 16, 2018. Defendant denied used buprenorphine. Defendant's specimen was forwarded to Alere Toxicology Services for further testing. On March 16, Alere Toxicology Services returned positive test results for oxycodone and buprenorphine. Defendant had no prescription for buprenorphine.

Concerning Defendant's failure to report his termination from his employment, Defendant told Officer Greiwe that he thought he was going to get his job back at Roger's Group, so he did not feel the need to report his termination. Similarly, concerning the allegations that Defendant had not lived at his reported residence since September 2018, Defendant advised that has stayed at that location some since September 2018, but that he has also stayed with other family members.

Following Defendant's contact with Officer Greiwe at the probation office on March 8, an officer with the London Police Department served the active warrant on Defendant and took him into custody. That case remains pending as Whitley County District Court case number 19-M-50144.

Based on these facts, the Report alleges that Defendant violated four conditions of his supervised release. First, citing Defendant's urine specimen that tested positive for buprenorphine, the Report alleges that he violated the condition forbidding, among other things, use or possession of any controlled substance except as prescribed by a physician. This is a Grade C violation.

Relatedly, the Report explains that buprenorphine is a Schedule III controlled substance under the Controlled Substances Act. Thus, "Due to the Sixth Circuit Court of Appeals' ruling that use is the equivalent of possession, and with the defendant's prior drug conviction, simple possession of buprenorphine constitutes conduct that would result in a violation of 21 U.S.C.

§ 844(a), Simple Possession of a Controlled Substance, a Class E Felony." On these facts, Violation No. 2 alleges that Defendant violated the condition that he not not commit another federal, state, or local crime. This is a Grade B violation.

Next, based on Defendant's failure to report his termination from Roger's Group on February 6 in a timely manner, Violation No. 3 alleges that he violated the condition of his supervised release that states: "The defendant shall notify the probation officer at least ten days prior to any change in residence or employment." This is a Grade C violation.

Finally, Violation No. 4 alleges another violation of the condition that Defendant not commit another federal, state, or local crime. According to the Report, the January 2 Complaint Warrant alleges that "Lawson threatened to kill Estella Stanley, her family, and the entire Williamsburg Police Department. Such conduct would result in violation of KRS § 508.080, Terroristic Threatening – 3rd Degree, a Class A misdemeanor." This is also a Grade C violation.

**II.**

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on March 28, 2019. D.E. 332. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention. *Id.* Defendant did not argue for release; he was remanded to the custody of the United States Marshal pending any future order of the Court. *Id.*

At the final hearing on April 12, 2019, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 335. Defendant waived a formal hearing and stipulated to the violations set forth in the Report. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant admitted under oath that he had used "Suboxone" and that he failed to timely report the loss of his job. Concerning the terroristic threatening charge, he admitted the government could prove it was more likely than not that he had threatened Ms. Stanley's life. Defendant's stipulation permits the Court to find that he engaged in conduct that is, at worst, a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

**III.**

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction for conspiracy to distribute oxycodone is a Class C felony, and his conviction for conspiracy to manufacture counterfeit obligations is a Class D felony. *See* 21 U.S.C. §§ 841(b)(1)(C), 846; 18 U.S.C. §§ 371, 471. Relevant for Defendant's present violations, for a Class C felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). Additionally, there is no maximum amount of supervised release that can be imposed following Defendant's release from custody. *See* 21 U.S.C. §§ 841(b)(1)(c), 846; *see also* 18 U.S.C. § 3583(h).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007). The Guidelines also instruct that, "[w]here there is more than one

violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade C violation with respect to Violation No. 1, No. 3, and No. 4 and as a Grade B violation with respect to Violation No. 2. Given Defendant's criminal history category of III (the category at the time of his conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is eight to fourteen months. *See* U.S.S.G. § 7B1.4(a). Both parties agreed to this calculation of the range.

**IV.**

At the final hearing, the parties presented a joint recommended sentence of eight months of incarceration followed by six months of supervised release. The parties argued that a revocation sentence at the bottom of the Guidelines was appropriate largely because Defendant had been compliant on supervision for three years. Indeed, his period of supervision was set to expire on April 27, 2019. He had also been a hard worker. Defendant had simply relapsed into his drug addiction and violence issues. He was largely being candid with the Court and had accepted responsibility by stipulating to the violations. The parties argued that eight months of incarceration would be sufficient to deter future violation conduct. And an additional six months of supervision would help him get back on his feet. Two things that concerned the government were that Defendant has violent charges in his past and that his Suboxone use related back to his underlying conviction. However, the government considered these aggravating factors to be more than balanced out by his three years of compliance. He accordingly has a high likelihood of

rehabilitation. The defense also added that Defendant had passed multiple drug tests through his employer during his supervision period.

Defendant addressed the Court. He explained he has a long commute to work, he works long hours, and his employer complimented him as the hardest worker he has ever had.

**V.**

The Court has reviewed the entire record, including the Report and its accompanying documents, and Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Likewise, the parties addressed the statutory factors in making their sentencing recommendations to the Court. Through its consideration, the Court will recommend adopting the jointly recommended penalty.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of 18 U.S.C. § 3583(g)(1). *See United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995); *see also United States v. Metcalf*, 292 F. App'x 447, 449 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court was "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a

controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Nothing in the record supports application of the exception.

The nature and circumstances of Defendant's underlying conviction are alarming. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). He was caught selling pills and manufacturing counterfeit currency. PSR ¶¶ 8, 22, 26. He also tried to bribe law enforcement into releasing his sons and framing a different person. *Id*. ¶¶ 10-12 The circumstances show blatant disrespect for the law.

The Court next considers Defendant's history and characteristics. Despite the brashness of Defendant's behavior in the underlying conviction, he has performed well on supervision for approximately three years. His probation officer considers him a remarkably hard worker. But, Defendant lost his job, and he is regretful for his resultant relapse into drug use.

The need to deter criminal conduct, both for Defendant and society, and the need to protect the public from further crimes heavily influence the Court's recommended sentence. Defendant carries a risk of criminal conduct, particularly when he is using drugs. Here, the conduct included felony drug possession, a threat of violence against another person, and failure to keep the Probation Office informed of his employment status. But Defendant was previously doing well. The deterrent effect of the incarceration and the buffer provided by additional supervision should adequately protect the public.

The Court must also consider whether a defendant needs any education, training, or treatment. This factor is not a focus today, but Defendant needs to be wary in the future of using pain medication.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range.

Finally, the Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b). Defendant clearly breached the Court's trust here. This breach is exacerbated by the presence of new criminal conduct, the threat of violence, and lack of communication with the Probation Office. He stated that he does not want to find himself back in Court, and the Court wishes him better success in the future.

Upon full consideration, the undersigned views the recommended sentence of revocation, to be followed by eight months of incarceration and six months of supervised release as being sufficient, but not greater than necessary, to comply with the purposes of the statutory scheme.

**VI.**

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS:**

(1) That Defendant be found guilty of all four violations;

(2) Revocation and imprisonment for a term of eight months; and

(3) Six months of supervised release under the conditions contained in Defendant's original judgment (D.E. 221).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 16th day of April, 2019.

**Signed By:**
***Hanly A. Ingram***
**United States Magistrate Judge**